IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| WENDY A. VICKERY, | } |
| Plaintiff, | } |
| | } CIVIL ACTION NO. |
| v. | } 03-AR-2987-J |
| | } |
| CAVALIER HOMES, INC., d/b/a | } |
| BUCCANEER HOMES, | } |
| Defendant. | } |

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion for summary judgment filed by defendant, Cavalier Homes, Inc. ("Cavalier"), seeking dismissal of the above-entitled action brought by plaintiff, Wendy Vickery ("Vickery"), under the Americans with Disabilities Act ("ADA").

**Statement of Facts[1]**

On August, 25, 2001 Cavalier hired Vickery to work in its plant in Haleyville, Alabama. On or about November 13, 2001, Vickery became ill with pneumonia. From that time, Cavalier began counting her medical leave time against its unwritten, but well-

---

[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P.; *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). In accordance with this standard, the following statement of facts includes both undisputed facts and the facts according to the plaintiff's evidence, where there is a dispute.

1

established two week limit for employees not covered by the Family Medical Leave Act. Vickery used up most of her available leave battling pneumonia.

As a byproduct of Vickery's treatment for pneumonia, her doctors discovered that she had breast cancer. While she was at work on December 5, 2001, Vickery's doctor called and informed her of her diagnosis. Her doctor did not go into detail with Vickery as to the specifics of her prospective treatment, telling her only that she would require surgery. Vickery promptly located her supervisor, Travis Wright ("Wright").

Wright suggested that the two of them go to see Human Resources Manager, Denise Harris ("Harris"). In that meeting, Vickery informed Harris that she had just been diagnosed with breast cancer. Immediately upon hearing the diagnosis, Harris told Vickery and Wright that Vickery would be terminated because she was out of leave time. Vickery had not asked for any sick leave, and never asked for any such leave.  At that time, Harris had no information about the diagnosis, other than that Vickery had breast cancer that would require surgery.

The next day, December 6, Vickery brought Harris a doctor's excuse for her doctor's appointment the day before. That doctor's excuse included a handwritten note adding that Vickery would need surgery and her estimated time of return to work was "unknown." At the time that note was presented to Harris, Harris told Vickery

that her medical leave would expire on December 7, 2001. Vickery had surgery on December 7, 2001 and filed for disability shortly thereafter. She never returned to work after her surgery. Cavalier removed Vickery from its payroll on December 10, 2001. On December 12, Vickery's doctor confirmed her total disability and her "unknown" return to work date. Since that time, Vickery has not worked anywhere, and remained on disability until at least June 2004.

## Analysis

Cavalier makes two primary arguments in support of its motion for summary judgment. First, Cavalier argues that Vickery was not a "qualified individual" under the ADA at the time of her termination. Second, Cavalier argues that it had a legitimate, non-discriminatory reason for terminating Vickery, namely, that she was out of medical leave time. Both of these arguments fail for the reasons provided below. In addition, Cavalier claims that even if summary judgment is not granted, summary judgment is appropriate on the availability of punitive damages.

### "Qualified Individual"

Cavalier argues that Vickery was not a qualified individual, as defined by the ADA, at the time she was terminated. The ADA prohibits discrimination against a "qualified individual" with a disability. 42 U.S.C. §12112(a). To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that (1) she

has a disability; (2) she is a "qualified individual"; and (3) she was subjected to unlawful discrimination. *See, e.g.*, *Wood v. Green*, 323 F.3d 1309 (11th Cir. 2003), *cert. denied* 124 S.Ct. 467 (2003). Cavalier argues only that Vickery was not a "qualified individual" under the statute, apparently conceding the other parts of the *prima facie* case for summary judgment purposes.

In order "to be a qualified individual under the ADA, a person must be able to perform the essential functions of his or her job with or without reasonable accommodation." *Wood*, 323 F.3d at 1312. By all accounts, Vickery was "qualified" to hold her job when she was terminated. As long as she was physically present at work she could perform the essential functions of her job. Cavalier, however, argues that Vickery was "unqualified" in the sense that she could not be physically present at work because of her cancer. At the moment she was terminated, Harris and Cavalier had no real evidence about the degree of Vickery's availability in the future. Cavalier's argument is less about whether Vickery was "qualified," than it is that her disability would require an "unreasonable accommodation" for her to continue to work at Cavalier, namely, indefinite leave. On the afternoon of December 5, 2001, no accommodation was necessary for Vickery to perform her job, and no accommodation had been asked for. The court looks to qualification at the juncture when the employment decision was made. *See, e.g.,Wells v. District Lodge 751*, 2001 U.S. App. LEXIS 3150 (9th

Cir. 2000)(finding that "qualified individual" analysis is measured at the time of the employment action, and not with regard to the fact that indefinite leave is not a reasonable accommodation).[2] When she was terminated, Vickery was a "qualified individual" under the statute. Later, of course, a doctor's note and disability application provided proof that Vickery was totally disabled and that her return to work date was "unknown." However, this evidence was not available to Cavalier when it determined to terminate Vickery. Therefore, there are issues of fact as to whether or not Vickery was qualified at the time of her dismissal.

Cavalier's argument that Vickery required an unreasonable accommodation is misplaced. Cavalier cites Eleventh Circuit precedent for the proposition that indefinite leave is not a reasonable accommodation under the ADA. *Wood*, 323 F.3d at 1314. However, regardless of whether an accommodation of indefinite leave was reasonable, Cavalier arguably should have engaged in an informal, interactive process to help the employee and employer

---

[2]Cavalier presents *Wood v. Green*, again, as the primary basis for its argument. Cavalier correctly notes, again, the indefinite leave is not a reasonable accommodation. The most relevant portion for consideration of whether Vickery was a "qualified individual" is:

> Significantly, these provisions [42 U.S.C. § 12111(8); 45 C.F.R. § 1232.3(i)] contain no reference to a person's future ability to perform the essential functions of his position. To the contrary, they are formulated in the present tense, framing the precise issue as to whether an individual "can" (not "will be able to" perform the job with reasonable accommodations.

*Wood*, 323 F.3d at 1313. Judging by this quotation, the Eleventh Circuit agrees that the time at which the plaintiff must be "qualified" for her job is at the time of the employment action, ***not*** some time in the future.

identify a possible reasonable accommodation. 29 C.F.R. § 1630.2(o)(3). However, the law of the Eleventh Circuit is that there can be no liability for failure to engage in such a process where no "reasonable accommodation" has been offered by the plaintiff. *See, e.g*, *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001). Regardless, but as an illustration, Cavalier, in actually engaging in such a process, would have discovered that there was no reasonable accommodation available to help Vickery. It terminated her before it even began any kind of dialogue, or had enough facts to determine what accommodations, if any, would be appropriate. Cancer treatments take a variety of approaches of differing intensities. At the moment Harris terminated Vickery, she had no idea about what Vickery's treatment would be (except possibly that it would require surgery). It was entirely possible, at the moment Vickery was terminated, that she would have only required a few days or a few weeks of leave. Such an accommodation might have been reasonable. The point is that by promptly terminating Vickery, Cavalier chose not to engage in a determination of whether a reasonable accommodation was necessary or to avail itself of the information it needed to determine that there was in fact no possible reasonable accommodation.[3] At the

---

[3] It seems perfectly clear with the benefit of hindsight that the only possible accommodation was indefinite leave, which this court knows is unreasonable as a matter of law. However, Cavalier had no way of knowing this at the time it terminated Vickery. If Cavalier had simply waited a few days or waited for Vickery to ask for leave and then determined the extent and course of her treatment, it could almost certainly have avoided all of its problems

moment she was terminated, Vickery was qualified for her job, and Cavalier had no reason to believe she would not continue to be qualified, possibly with some reasonable accommodation. Thus, ultimately, the issue here seems not to be one of what, if any, reasonable accommodation existed, but of whether pure discrimination took place against someone with, or regarded as having a disability. *See, e.g. Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907,913 (11th Cir. 1996).

Because issues of fact exist as to whether Vickery was a qualified individual, for summary judgment purposes Vickery has established a *prima facie* case.

### Cavalier's Legitimate Non-Discriminatory Reason

Cavalier claims that even if Vickery has established a *prima facie* case, it is still entitled to summary judgment because it had a legitimate non-discriminatory reason for terminating Vickery, namely, that she had run out of her two weeks of medical leave. This argument proves problematic because a) it may not constitute a legitimate non-discriminatory reason, and b) there are issues of fact as to pretext.

The expiration of Vickery's leave may not be a legitimate non-discriminatory reason for her dismissal. As is apparent from the prior discussion of reasonable accommodation, at the time of

---

here. Instead, however, Vickery argues that Cavalier chose to make a knee-jerk reaction merely to the diagnosis of cancer (without any more information about Vickery's hopes for recovery, etc.).

Vickery's termination on December 5, Cavalier had no information about the extent of her treatment. To rely on a lack of available leave simply begs the question of the propriety of the decision. By Cavalier's reasoning, if it did not provide any medical leave to any employee who was not covered by the Family Medical Leave Act, it could fire any such employee (not covered by the FMLA) who became ill the moment it found out about the illness, without regard to accommodation. A reasonable accommodation, at the time Vickery was terminated, might have been to provide further, but not indefinite leave, for instance, two weeks. If that accommodation had been reasonable, and allowed Vickery to return to work, would Cavalier be able to rely on the expiration of her leave as the basis for her termination? Certainly not.

Regardless of whether Cavalier's proffered reason is non-discriminatory, there is a material issue of fact with regard to pretext. Vickery argues that Cavalier's proffered reason is pretextual because it acted without sufficient knowledge of the facts of Vickery's diagnosis, and based its decision to terminate her on biases, prejudices, or unwarranted inferences about cancer. Cavalier argues that there is no evidence supporting the conclusion that when Vickery came to see Harris, the effect of her cancer on her work was undetermined. Cavalier, as evidence for this proposition, notes that "the first note presented to Cavalier stated that plaintiff needed immediate surgery and that a return to

work date could not be given." Unfortunately for Cavalier, this evidence does not disprove pretext. According to Cavalier's own chart of dates provided on page four of its brief, this "first note" was received on December 6, 2001.[4] The problem, of course, is that according to Vickery's testimony, she was told that she was terminated at a meeting with Harris and Wright on December 5, 2001. On December 6, 2001, Cavalier had some evidence (although possibly not enough[5]) to judge the length of Vickery's illness and her possibility of return. On December 5, when Vickery was terminated, Cavalier had no information other than the knowledge that Vickery had been diagnosed with cancer. Choosing to terminate her based only on this information tends to indicate that Cavalier assumed that Vickery would no longer be able to perform her job because she had cancer. In fact, Cavalier's own reply brief reminds the court that Vickery did not even ask for more leave. Thus, without Vickery bringing the issue up, Cavalier, on December 5, simply **assumed** she would need indefinite leave. It appears, with the benefit of hindsight, that Cavalier was right. However, the motivation of

---

[4] Cavalier insinuates that the note may have in fact been presented to them earlier than May 6, because it was dated May 5. The note seems to have been written and dated on May 5, when Vickery visited. This visit was, of course, just **after** she got the call from her doctor at work and went to speak with Harris. Thus, if she was terminated at that meeting, it was before the note was even written, much less taken into account by Cavalier.

[5] Any doctor who is about to perform surgery on a patient will likely provide an unknown return to work date. To do otherwise would be irresponsible in many circumstances because it is almost never certain that there will be no complications or need for further treatment after surgery. "Unknown," in this context, usually literally means unknown and not just a long time from now.

Cavalier at the time Vickery claims she was terminated cannot be resolved at this point because issues of fact remain. Therefore, because there is an issue of fact as to pretext, summary judgment on Cavalier's legitimate non-discriminatory reason is inappropriate.

**Punitive Damages**

Finally, Cavalier argues that even if summary judgment of the claim against it is not appropriate, summary judgment still should be granted on the issue of punitive damages. Punitive damages are available under the ADA where an employer "engaged in a discriminatory practice or discriminatory practices with malice or reckless indifference to the federally protected rights of the individual." 42 U.S.C. § 1981a (b)(1).

Cavalier argues that punitive damages are not available against it because it undertook "good-faith efforts to prevent discrimination in the workplace." *See Kolstad v. American Dental Assoc.*, 527 U.S. 526, 545-46 (1999). Cavalier lists a number of reasons that it claims to show that it acted in good faith to reduce discrimination, for instance: Cavalier disseminated an anti-discrimination policy; it gave two weeks medical leave to short term employees voluntarily even though the FMLA did not require it; it gave Vickery company sponsored benefits for two years; and it invited her to reapply if she ever was able to return to work. Unfortunately, none of these truly show that Cavalier worked in

good-faith to reduce disability based discrimination in its workplace. *See, e.g, Lowery v. Circuit City Stores, Inc*. 206 F.3d 431, 446(4th Cir. 2000)(noting that a written anti-discrimination policy does not automatically establish good faith enforcement).

The most damaging fact is one not listed by Cavalier. Assuming Vickery's version of the facts, Cavalier's HR director, Harris, terminated Vickery instantly upon hearing that she had cancer. An anti-discrimination policy is only as good as the people enforcing and encouraging it. As HR director, Harris certainly had some role in the enforcement of the company's anti-discrimination policies, especially in hiring and firing.[6] The mere fact that Vickery says Harris was the primary actor in the alleged discrimination against her creates an issue of fact as to whether the company undertook "good-faith efforts to prevent discrimination." Not to mention, while liability cannot attach for failure to take an informal, interactive approach to finding a reasonable accommodation in these circumstances, the failure to do so might be evidence of a lack of good faith. Taking Vickery's claims at face value, there is an issue of fact as to the "good-faith efforts" defense, and therefore, summary judgment is inappropriate on the punitive damages question.

---

[6]Also, the "Buccaneer Homes" Personnel Policy book tells employees to direct their questions or concerns about the policies, including the anti-discrimination policy, to the Personnel Department, presumably headed by Harris.

**Conclusion**

In light of the foregoing, Cavalier's motion for summary judgment is **DENIED**. Pre-trial conference is hereby **SET** for Friday, April 22, 2005, at 9:30 am, in accordance with the attached pretrial instructions.

DONE this __5th_____ day of April, 2005.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE